**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY<br><br>Plaintiff,<br><br>v.<br><br>P&W HOLDINGS ENTERPRISE, LLC, B.B. JACK, LLC, B.B. JACK, LLC, HORIZON HOME AND FARM IMPROVEMENT, INC., MICHAEL D. WEBB, JESSICA WEBB, NICHOLAS ANDREW POOLMAN and APRIL POOLMAN,<br><br>Defendants. | ) | Case No.: |

**COMPLAINT FOR CONTRACTUAL INDEMNITY AND SPECIFIC PERFORMANCE OF COLLATERAL DEPOSIT PROVISION**

American Contractors Indemnity Company ("ACIC") sets forth the following as its complaint against P&W Holdings Enterprise, LLC ("Holdings"), B.B. Jack, LLC ("Jack"), Horizon Home Improvement, Inc. ("Horizon"), Michael D. Webb, and Nicholas Andrew Poolman (referred to as "Defendants" or Indemnitors"):

## PARTIES

1. ACIC is an insurance company organized under the laws of the State of California with its principal place of business in the State of California and is a citizen of the State of California.

2. Defendant Holdings is a company organized under the laws of the State of Wisconsin with its principal place of business in the State of Wisconsin, with two members, Nicholas Andrew Poolman, a citizen of Iowa, and Michael D. Webb, a citizen of Wisconsin.

3. Defendant Jack is a company organized under the laws of the State of Iowa with its principal place of business in the State of Iowa, with its sole member being Nicholas Andrew Poolman, a citizen of the State of Iowa.

4. Defendant Horizon is a company organized under the laws of the State of Iowa with its principal place of business in the State of Iowa, with its sole member being Nicholas Andrew Poolman, a citizen of the State of Iowa.

5. Defendant Michael D. Webb is an individual residing in the State of Wisconsin and is a citizen of the State of Wisconsin.

6. Defendant Jessica Webb is an individual residing in the State of Wisconsin and is a citizen of the State of Wisconsin.

7. Defendant Nicholas Andrew Poolman is an individual residing in the State of Iowa and is a citizen of the State of Iowa.

8. Defendant April Poolman is an individual residing in the State of Iowa and is a citizen of the State of Iowa.

## JURISDICTION AND VENUE

9. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of the State of California, the Defendants are citizens of the State of Wisconsin and Iowa, and the amount in controversy exceeds $75,000.00.

10. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391, as Defendants reside within this district and the performance of the contracts and other

obligations that are the subject matter of this suit were to be primarily performed within this district, the Defendants conduct business within this district, and under the terms of the General Indemnity Agreement, dated April 21, 2022, the Defendants agreed that suit could be brought in this district. The General Indemnity Agreement is **Exhibit A** to this Complaint.

## FACTUAL BACKGROUND

11. ACIC provided surety bonds which secured the obligations of General Construction Services, Inc., P&W Holdings Enterprise, LLC, B.B. Jack, LLC, and Horizon Home and Farm Improvement, Inc., to perform its contracts with the obligees. ACIC provided the following bonds to secure P&W Holding's performance of contracts with the named obligees:

| Bond Number | Obligee | Contract/Project |
|---|---|---|
| B#1001188341 | Village of Henderson | New Water Tower |
| B#1001203087 | Barry Township | 200,000 Gallon Tank Refurbishment |
| B#1001203118 | Town of Rosholt | Elevated Water Reservoir Improvements |
| B#1001203261 | City of Fair Play | Elevated Storage Rehabilitation |
| B#1001203322 | City of Dalton | Water System Improvements |
| B#1001188080 | City of Murdock | Water Storage Tank Improvements |
| B#1001223796 | City of Bisbee | Water Tower Repair |

12. In consideration of the execution of the Bonds and as a condition for ACIC to provide bonds, the Defendants entered into the General Indemnity Agreement ("GIA") that is **Exhibit A**.

13. The GIA provides the Defendants must indemnify and exonerate ACIC should it incur losses or be threatened with claims, and states in part in paragraph III:

> *The Principals and Indemnitors shall, jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types*

*of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection……*

14. The GIA also provides the Defendants must provide collateral upon request to ACIC should an Event of Default occur, and states in part in paragraph X:

*If an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion. Such collateral shall be held by the Surety as collateral security in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with the Surety or any other benefits and protections afforded to the Surety by this Agreement or any other agreement….*

15. Pursuant to GIA provisions set forth above, the Defendants are jointly and severally obligated to indemnify ACIC from any and all expenses, including attorneys' fees, that ACIC might incur as the result of having issued the Bonds, and upon request, deposit collateral security with ACIC to protect ACIC from present or future liability.

16. Defendants were unable to continue performing the work on the contracts for which ACIC provided bonds and abandoned those contracts.

17. By letter dated December 9, 2025, ACIC requested that Defendants provide collateral in the amount of the claims the pending, $575,232.61; subsequent to that request,

ACIC paid claims, fees and expenses that it seeks to recover in this Complaint and faces additional claims that have yet to be paid for which ACIC is entitled to receive collateral from the Defendants. The Collateral Request Letter is **Exhibit B** to this Complaint.

18. As required by the terms of the Bonds, ACIC arranged for the performance of the work required by the contract and paid to complete those contracts.

19. As of the date of filing this complaint, ACIC paid for performance of the contracts and expenses and attorneys' fees in the amount of $781,771.68.

20. Defendants have failed or refused to post collateral or to reimburse ACIC as required by the terms of the GIA.

21. ACIC lacks an adequate remedy at law, absent the Court enforcing the Defendants' full performance of the GIA.

22. ACIC is continuing to incur losses, attorney's fees, and expenses because of the Defendants' failure to uphold its obligations under the GIA.

## COUNT I
## BREACH OF THE GENERAL AGREEMENT OF INDEMNITY

1-22. ACIC restates and realleges paragraphs 1-22 as set forth above as and for paragraphs 1-22 of Count I.

23. ACIC has fully performed its obligations under the terms of the GIA.

24. The Defendants breached their obligations to ACIC by failing to reimburse $781,771.68 of losses, expenses, and fees paid by ACIC as of the date of filing this Complaint.

WHEREFORE, American Contractors Indemnity Company, prays the Court enter judgment in its favor and against the Defendants in the amount of $781,771.68, and such other additional amounts as ACIC may have paid at the time of the entry of judgment on Count I,

together with the additional attorneys' fees and costs it will have paid, and for such further relief as the Court deems appropriate.

## COUNT II
## SPECIFIC PERFORMANCE OF THE COLLATERAL DEPOSIT PROVISION

1-22. ACIC restates and realleges paragraphs 1-22 as set forth above as and for paragraphs 1-22 of Count II.

23. ACIC has fully performed its obligations under the terms of the GIA and made request to the Defendants for collateral to secure ACIC from unpaid claims.

24. The Defendants breached their obligations to ACIC by failing to comply with the request to provide collateral and have a continuing obligation to provide collateral to ACIC in an amount that ACIC determines in its discretion will secure it from losses.

WHEREFORE, American Contractors Indemnity Company, prays the court enter an order compelling the Defendants to provide collateral up to the full amount of the Bonds, $7,169,675.81 (less the damages awarded for claims in Count I), or such other amount that will secure ACIC from future losses, and to award expenses, attorneys' fees and costs and in seeking this relief, and for such other relief the Court deems appropriate.

Dated:

AMERICAN CONTRACTORS
INDEMNITY COMPANY

/s/ T. Scott Leo

T. Scott Leo (WI # 1089980)
sleo@leolawpc.com
Law Offices of T. Scott Leo, P.C.
100 N. LaSalle St.
Suite 514
Chicago, IL 60602
Phone: 312-857-0910

# Exhibit A

DocuSign Envelope ID: 3E578C94-3A59-4026-BA5F-226C15134C5B

TOKIO MARINE
HCC

Surety Group
801 South Figueroa Street Suite 700
Los Angeles, CA 90017 USA

# General Indemnity Agreement

Contract

THIS GENERAL INDEMNITY AGREEMENT (hereinafter, the "Agreement") is made and entered into 21st day of April, 2022 by and among the Principal (as hereinafter defined):

General Construction Services, Inc. - P&W Holdings Enterprise, LLC - B.B. Jack, LLC - Horizon Home and Farm Imp
*(Insert full name of the Principal(s))*

and Indemnitor (as hereinafter defined):

Michael D. Webb, Individually, Jessica Webb Individually, Nicholas Andrew Poolman Individually, April Poolman, Indi
*(Insert full name of the Indemnitor(s), if any)*

jointly and severally, and is executed for the continuing benefit of the Surety (as hereinafter defined).

NOW THEREFORE, in consideration of the premises set forth herein and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged by the Principal(s) and Indemnitor(s), the Principal(s) and Indemnitor(s), for themselves and their successors and assigns, hereby covenant and agree as follows:

## I. DEFINITIONS

The terms listed below shall have the following meanings for purposes of this Agreement:

A. "Bond" or "Bonds" shall mean any contractual obligation, undertaking, contract of suretyship, guaranty or indemnity undertaken by the Surety, issued on behalf of or procured for any Principal by the Surety before, on, or after the date of this Agreement and any renewal, modification, extension or substitution of such obligation, undertaking, contract of suretyship, guaranty or indemnity.

B. "Contract" shall mean any agreement between or among any Principal and any one or more parties other than the Surety, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has executed or procured the execution of any Bond in connection therewith.

C. "Bonded Contract" shall mean any Contract in connection with which Surety has issued or procured a Bond.

D. "Event of Default" shall mean any one or more of the following:

1. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal to perform any Contract, or any obligation contained therein;
2. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal to perform any obligation contained in any Bond, or to perform or comply with any and all of the terms, covenants, and conditions of this Agreement;
3. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal or Indemnitor to perform any contract or agreement, other than this Agreement, to which the Surety and any Principal or Indemnitor shall be parties, including but not limited to, any security agreement, mortgage, deed of trust or other document or instrument delivered to the Surety for the purpose of providing collateral security of the obligations hereunder, or the non-renewal or failure to honor, by any issuer or bank, any letter of credit provided to or for the benefit of the Surety;
4. The declaration by any obligee or project owner that any Principal is in default under any Contract, irrespective of whether or not such Principal is actually in default under such Contract, or the acknowledgement by such Principal of its default under such Contract;
5. Any delay, failure, refusal or inability of any Principal to pay claims, bills or any other indebtedness incurred in, or in connection with, the performance of any Contract, in whole or in part, when such obligations come due;
6. The payment by the Surety of any claim under any Bond;
7. Any suit or other judicial or quasi-judicial proceeding, including arbitration, or other form of alternative dispute resolution, being commenced against the Surety as it relates to any Bond, Contract, Principal, or Indemnitor;
8. Any failure or refusal by any Principal or Indemnitor to perform any obligation under any provision or term of this Agreement.
9. Any failure by any Principal or Indemnitor to pay or discharge, when due or as demanded by the Surety, any indebtedness of any Principal to the Surety or to any obligee, or to any subcontractor, supplier, laborer or materialman or any other claimant on any Bonded Contract or under any Bond;
10. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;
11. Any failure by any Principal to notify the Surety, in writing, within five (5) days of such Principal's receipt of a claim, cure, show cause or other notice from any obligee relating to any Bond or any Bonded Contract;
12. Any failure by any Principal to notify the Surety, in writing, within ten (10) calendar days, of any increase(s) in the dollar amount or value of any Bonded Contract by more than twenty-five percent (25%);
13. The making of any untrue, inaccurate, misleading, or incomplete representation or warranty by any Principal or Indemnitor to the Surety or Surety's agent/broker including, without limitation, any representation as to the financial condition of any Principal or Indemnitor;
14. Any diversion of any contract funds by any Principal from any Bonded Contract to make payment of obligations on any other Contract or any other obligations, prior to obtaining the complete discharge of the Surety on the Bonded Contract from which funds have been diverted;
15. Any pledge or assignment by the Principal of any contract balance or contract receivable from a Bonded Contract to a third party, including a lender or factor, without the prior express written authority of the Surety;

DocuSign Envelope ID: 3E578C94-3A59-4026-BA5F-226C15134C5B

16. The insolvency of any Principal or Indemnitor; the commencement of any insolvency, bankruptcy, receivership, trusteeship or other such proceeding of which any Principal or Indemnitor becomes a subject; or any assignment for the benefit of creditors by any Principal or Indemnitor;
17. Any individual Principal's or Indemnitor's death, adjudication of mental incompetence or disability, conviction of a felony, becoming a fugitive from justice or inability to be located after reasonable efforts;
18. Any material change in the character, identity, control, composition, beneficial ownership or legal status or existence of any Principal or Indemnitor who is not a natural person, it being understood that a change in five percent (5%) or more of the ownership or controlling interests in any such entity shall be deemed a material change;
19. The establishment by the Surety, in its sole and absolute discretion, of any reserve in any amount in connection with any Bond;
20. The failure of any Principal or Indemnitor to pay any premium, including, but not limited to, additional premiums based on an overrun or increase in contract price, to the Surety or to any agent of the Surety, when due or as demanded thereafter by the Surety;
21. In the event that any Principal or Indemnitor provides or pledges any property of any type to the Surety as collateral security for, or as a condition precedent to the issuance of Bonds, a decline or deterioration in the value of such property equal to or exceeding twenty percent (20%), as determined by the Surety in its sole and absolute discretion.

E. "Indemnitor" shall mean and include any and all Principal(s), as hereinafter defined, and each and every person or entity who executes this Agreement as an Indemnitor, together with his/her/its successors and assigns.

F. "Principal" shall mean any and all individuals or entities executing this Agreement as a Principal, together with his/her/its successors and assigns. In the event that Surety is requested to and does issue a Bond that names an Indemnitor (other than one who has executed this Agreement as a Principal) as the bond principal, then such Indemnitor shall also be deemed a Principal for all purposes under this Agreement.

G. "Surety" shall mean American Contractors Indemnity Company, U.S. Specialty Insurance Company, United States Surety Company, Texas Bonding Company, HCC Insurance Holdings, Inc., Tokio Marine HCC – Surety Group, their affiliates, divisions, subsidiaries, successors, assigns, co-sureties, reinsurers, fronters, partners and/or joint venturers; and any other person or entity which the Surety may direct, request or procure to act as the Surety or as a Co-Surety on any Bond; and any other person or entity who executes a Bond at the request of the Surety.

## II. INDEMNITOR REPRESENTATIONS AND ADDITIONAL CONSIDERATION

Each Indemnitor represents, warrants and guarantees, unconditionally and with the intention that the Surety shall rely upon such representations without investigation or verification, as follows:

A. The Indemnitor has read this Agreement carefully, has consulted with an attorney regarding this Agreement or has had an opportunity to consult with an attorney regarding this Agreement and has elected not to do so; and the Indemnitor understands this Agreement and that the Indemnitor is bound to the terms of this Agreement;

B. This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement. This Agreement is made and entered into as a result of negotiations in a free and active market in which the Indemnitor has and has had alternatives;

C. The Indemnitor intends: (i) that the Surety shall rely upon the Indemnitor's credit, including all of the Indemnitor's assets; (ii) that the Surety shall undertake legal or financial risk or forego rights or remedies that might otherwise be available to the Surety based upon such reliance; and (iii) that such reliance is reasonable;

D. The Indemnitor has a substantial, material and beneficial interest in: (i) obtaining one or more Bonds on behalf of the Principal; (ii) the Surety's forbearance from canceling one or more Bonds; and/or (iii) the performance and fulfillment of the obligations secured or to be secured by one or more Bonds; and

E. The Indemnitor's undertakings by and through this Agreement are given in consideration of the issuance (whether in the past, contemporaneously with the execution of this Agreement, or in the future) by the Surety of one or more Bonds and/or the Surety refraining from cancelling one or more Bonds.

## III. INDEMNITY, EXONERATION AND HOLD HARMLESS

The Principals and Indemnitors shall, jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection.

The Principals and Indemnitors further agree that they shall be liable for, and that the Surety shall be entitled to charge and recover for, any and all payments made by the Surety in the good faith belief that: (1) any Principal or Indemnitor is or has been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability. The Surety shall be entitled to the rights and remedies set forth in this Section III and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by the Surety in good faith. The foregoing obligations shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

## IV. ASSIGNMENT

A. As security for performance of all of the provisions of this Agreement, effective as of the date of this Agreement, the Principals and Indemnitors hereby assign, transfer, pledge, and convey to the Surety all of their right, title, and interest and estate in and to all real and personal property which they now own or hereafter acquire, including all income and receipts therefrom and increases and appreciation thereon, including, but not limited to:

1. All right, title and interest in, to or arising in any manner out of any Contract or Bonded Contract, including the right to receive progress payments, payments on claims, changes or allowances, retained sums or any and all other monies due or to become due deriving in any manner from any Contract or Bonded Contract;
2. All equipment, machinery, plant, tools, inventory, or materials which are now or may thereinafter be ordered, stored or utilized in connection with any Contract or Bonded Contract, whether or not any such materials are located at a construction site, in storage, in transit or elsewhere;
3. All right, title and interest in, to, and arising out of all subcontracts or purchase orders let or entered into in connection with any Contract or Bonded Contract, including any and all surety bonds, guarantees or other undertakings supporting such subcontracts or purchase orders;
4. Any and all rights arising out of, or monies due or to become due in connection with, any and all annuities, insurance policies, accounts receivables, and notes, and any claims and court actions of any kind;
5. Any and all undisbursed loan funds, deposit accounts, or interest reserve accounts.

B. The assignments set forth in this Section IV are in addition to, and shall not in any way impair, any rights of subrogation which the Surety has or may have.

## V. UNIFORM COMMERCIAL CODE

With respect to the assignments set forth in Section IV of this Agreement, this Agreement constitutes a Security Agreement and Financing Statement for the benefit of the Surety, both in accordance with the provisions of the Uniform Commercial Code or similar statute of every jurisdiction in which such Code or statute is in effect. This Agreement may be so used by the Surety without in any way abrogating, restricting or limiting its rights under this or any other Agreement between or among the Surety and any Principal or Indemnitor. A copy of this Agreement shall be sufficient for the purposes mentioned in this Section. The Surety may add schedules to this Agreement which describe more specifically items of security covered by this Assignment. The Indemnitor acknowledges and agrees that the Surety's disposition or settlement of a claim against a Bond will conclusively be deemed to have been commercially reasonable so long as the settlement of the claim is otherwise in accordance with the standards set forth in this Agreement or otherwise as required by applicable law.

## VI. ATTORNEY IN FACT

The Principals and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to the Surety in this Agreement. In the name of any Principal or Indemnitor, the Surety may make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect to the intent and meaning of the within assignments and under all other provisions of this Agreement. The Principals and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact. Without limiting the generality of the foregoing, the Principals and Indemnitors expressly agree and recognize that the powers given to the Surety as attorney-in-fact include the powers and authority to execute any and all documents (including, but not limited to, deeds of trust, mortgages, checks, stock certificates, and bonds) and to take any and all actions that the Surety may deem necessary in order to liquidate or acquire any real or personal property assigned, transferred to, or acquired by the Surety as security, indemnity, or reimbursement in connection with the obligations under this Agreement.

## VII. TRUST FUNDS

All funds received by any Principal or Indemnitor, or which are or become due under any Bonded Contract (regardless of who has possession of such funds), are trust funds in which the Surety has an interest, and which the Principal and Indemnitor pledge for the benefit of and payment to the Surety as reimbursement to the Surety for any actual or potential liability, loss, cost or expense the Surety may sustain or incur under any Bond or which is otherwise recoverable under this Agreement. If the Surety discharges any obligation to a claimant under a Bond, it shall be entitled to assert the claims of such claimant to the trust funds. Any Principal or Indemnitor shall, upon demand of the Surety, deposit or cause to be deposited said trust funds either in an account or accounts to be held or maintained by the Surety and/or in one or more accounts with a bank, third-party contract escrow agent or similar depository approved by the Surety. Withdrawal(s) from any such account(s) shall be signed, executed, or otherwise approved in writing by an authorized representative of the Surety, including, but not limited to, a third-party escrow agent. Said trust or trusts shall terminate on the payment by the Principal and Indemnitor of all of the obligations for the payment of which the trust or trusts are created or upon the expiration of twenty (20) years from the date hereof, whichever occurs first.

## VIII. SETTLEMENTS

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract. If, however, any Principal or Indemnitor desires that the Surety consider adjusting, settling, prosecuting, defending, compromising, litigating, protesting, or appealing, any claim, demand, suit, award, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:

A. Give written notice to the Surety to this effect by certified or registered mail; and

B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement. The Surety shall be entitled to utilize counsel of its own choice in prosecuting, defending, resisting, litigating or appealing any such claim, demand, suit, award or judgment, or in appealing from any judgment, award or assessment, whether or not any Principal or Indemnitor also provides its own counsel, and all associated costs and expenses shall be recoverable by the Surety pursuant to this Agreement.

Performance of both sub-Section A and B of this Section VIII shall be an absolute condition precedent to the right of a Principal or Indemnitor to challenge the Surety's good faith with respect to settlement of any claims asserted

against the Surety. Performance of both sub-Sections A and B of this Section IX shall not, however, in any way diminish the right of the Surety to compromise, settle, pay, or otherwise discharge any claim, demand, suit, award or judgment in its sole and absolute discretion, subject only to its obligation of good faith as provided herein.

## IX. REIMBURSEMENT

In the event of any payment by the Surety, an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment and, in the absence of actual fraud, shall be final, conclusive and binding upon any Principal or Indemnitor in any claim, suit or other proceeding by the Surety.

## X. DEPOSIT WITH SURETY

A. If an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion. Such collateral shall be held by the Surety as collateral security in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with the Surety or any other benefits and protections afforded to the Surety by this Agreement or any other agreement.

B. The Surety shall have the right, at any time and without notice or legal process, to: (1) deposit, invest, convert, cash, exchange, renew, sell or otherwise dispose of such collateral or the proceeds thereof in any manner, in such form and on such terms as it deems proper; (2) use such collateral, or any part thereof, at any time, in payment or compromise of any premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement, or to reimburse itself in the event that the Surety shall have paid or subsequently pays any such premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement. However, the Surety shall have no obligation to invest or to provide a return on any collateral security deposited pursuant to this Section X.

C. In the event of a sale or other transfer or liquidation of any collateral, the Surety shall be liable or accountable to the Principals and Indemnitors only for surplus funds realized after all obligations to the Surety pursuant to this Agreement or otherwise have been met.

D. The Surety shall not be liable to any Principal or Indemnitor for any actions taken by the Surety pursuant to this Section X under the good faith belief that it was liable or potentially liable for any payment made, whether or not such liability actually exists or existed. The Surety shall not be liable to any Principal or Indemnitor for any diminution in value, loss, damage or destruction of or to collateral held by the Surety, no matter how such diminution in value, loss, damage or destruction may occur.

E. The Principals and Indemnitors recognize, acknowledge and agree that the amount of any collateral demand made under this Section X shall be deemed a liquidated amount, immediately due and owing upon demand.

F. The Principals and Indemnitors shall be entitled to a refund of any unused portion of any collateral security deposited pursuant to this Section X upon termination of the Surety's liability on all Bonds and the performance by the Principals and Indemnitors of all obligations to the Surety pursuant to this Agreement.

## XI. TAKEOVER

Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, in its sole and absolute discretion, and is hereby authorized to take possession of any part or all of the work under any Bonded Contract and, at the cost and expense of the Principals and Indemnitors, to complete or to arrange for the completion of such Bonded Contract. If the Surety elects to take possession as provided in this Section, (1) the Principals and Indemnitors shall promptly, upon demand, pay to the Surety all costs, losses and expenses incurred by the Surety or otherwise recoverable pursuant to any of the provisions of this Agreement, and (2) the Surety shall have the right, but not the obligation, to take possession of the Principals' equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for the completion of any Bonded Contract.

## XII. ADVANCES

The Surety, in its sole and absolute discretion, is authorized and empowered, but not required, to guaranty loans or to advance or lend to or for the account of the Principals any money which the Surety may see fit, in connection with any Bonded Contract. Any such payments made or obligations incurred by the Surety (including any and all related costs and expenses) shall be conclusively deemed to be a loss to the Surety for which the Principals and Indemnitors shall be liable under this Agreement. If the Surety makes any advances or loans pursuant to this Section, it will not be obligated to monitor or ensure any particular application of the proceeds thereof, and the obligations of the Principals and Indemnitors under this Agreement shall not be affected by the fact that some or all of the proceeds thereof may not have been utilized as intended. The Surety retains the absolute right, in its sole and absolute discretion, with or without cause and with or without notice, to cancel any guaranty or to cease advancing or lending money to or for the account of the Principals.

## XIII. BOOKS, RECORDS AND INFORMATION

The Principals and Indemnitors shall furnish to the Surety such information as the Surety may request from time to time concerning the following: (1) the financial condition of the Principals and Indemnitors; (2) the status of work under any Contract; (3) the condition or status of the performance of any Contract; (4) the payment of any obligations incurred in connection with any Contract; and (5) the status of claims or entitlements of any Principal in connection with any Contract, or in connection with any subcontract, supply or service accounts such Principal may have with third parties in connection with any Contract. Until the Surety's liability under all Bonds is terminated, the Surety shall have the right to access all of the books, records and accounts of the Principals and Indemnitors, wherever located, at any reasonable time, and upon reasonable notice. The Surety shall have access to any information and documents maintained on behalf of or in connection with the Principals and Indemnitors: (1) at any banks or depositories; (2) with any obligees on any Bond; and (3) by certified public accountants (or other accountants), credit reporting agencies, materialmen, supply houses or any other persons, firms, or corporations doing business with the Principals and/or Indemnitors, and all of the foregoing entities are hereby expressly authorized to furnish to the Surety any information requested by it. The Principals and Indemnitors hereby further authorize the Surety, through its representatives, to visit job sites and projects described in any Contract, to obtain access to all job records and personnel or any owners or obligees to determine the status of work on any Contract, and to obtain any and all other information and documents deemed necessary in the Surety's sole and absolute discretion for the protection of its

DocuSign Envelope ID: 3E578C94-3A59-4026-BA5F-226C15134C5B

interests. Presentation of this Agreement shall constitute the Principals' and Indemnitors' consent to the release of all such information and an express waiver of any and all applicable privileges. The Surety's entitlement to such information is not dependent on the occurrence of an Event of Default.

**XIV. WAIVER OF NOTICE**

The Principals and Indemnitors waive all notice of: (1) the execution of any Bond; (2) the acceptance of this Agreement; (3) any default; (4) any act(s) giving rise to any claim or liability under any Bond or this Agreement; (5) any and all liability of the Surety under any Bond; and (6) any facts or information concerning the rights or liabilities of the Surety, the Principals or Indemnitors. The Principals and Indemnitors shall be liable hereunder notwithstanding any lack of notice of any kind to which they otherwise might have been entitled, and notwithstanding any defenses they otherwise might have been entitled to make.

**XV. RIGHTS OF SURETY**

The Surety shall have the right, in its sole and absolute discretion, without notice to the Principals or Indemnitors, to:

A. Increase or decrease the penalty or penalties of any Bond, to change any obligees thereon, to execute any continuations, enlargements, modifications or renewals thereof or substitution therefor with the same or different conditions, provisions, or obligees, and with the same, larger or smaller penalties, it being agreed that this Agreement shall apply to and cover such new or altered Bond or renewals even though the consent of the Surety may or does substantially increase the liability of the Principal or Indemnitor; or

B. Take such steps as the Surety may deem necessary or expedient to obtain its release from liability or lessen or mitigate its liability under any Bond or in connection with any Contract; or

C. Assent to any changes in any Contract, including, but not limited to, any change in the time for completion or performance of any Contract and to payments or advances thereunder; or

D. Make, assent to, or take any assignment.

**XVI. SUITS**

In the event of any Event of Default, the Surety may, in its discretion, bring separate suits as causes of action accrue, or otherwise, and the bringing of suit or recovery of judgment upon any cause of action or the failure to commence suit on any cause of action shall not prejudice, waive, bar, limit, impair or estop the Surety's right to bring other suits upon other causes of action, against the same or different parties. The Surety may bring separate suits with respect to any claims and against any or all or less than all of the Principals or Indemnitors, and the bringing of, entry of judgment in, or compromise or settlement of, any such suit (or claim upon which such suit is based) shall not prejudice, waive, bar, limit, impair or estop the bringing of any other such suit(s).

**XVII. CHOICE OF FORUM, VENUE, JURISDICTION AND CHOICE OF LAW**

The Principals and Indemnitors hereby consent to enforcement of this Agreement and submit themselves to personal jurisdiction in, at the Surety's election, any federal or state court in the State of California or in any jurisdiction in which (1) the Surety may sustain or pay any loss for which the Principals and Indemnitors may be liable; (2) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond; (3) any construction project may be located which is the subject of any Bonded Contract; or (4) any assets of any Principal or Indemnitor may be located.

For the purpose of any litigation brought by the Surety under this Agreement, all obligations of the Principals and Indemnitors are performable, and all monies due the Surety hereunder are payable, in the jurisdiction in which the Surety files the litigation, and this Agreement shall be construed and enforced in accordance with the laws of the state in which the Surety files the litigation, without regard to principles of conflict of laws.

**XVIII. TERMINATION**

Any Principal or Indemnitor may terminate this Agreement – prospectively and not retroactively – by giving 30 days' written notice to the Surety at the address set forth below. Any such termination shall become effective thirty (30) days following receipt of the notice by the Surety. Any such termination shall apply only to the Principal(s) and/or Indemnitor(s) giving notice and only to Bonds issued by the Surety after the effective date. Any notice of termination shall not operate to modify, bar, discharge, limit, affect or reduce the terminating party's or parties' obligations with respect to: (1) any Bond which is or was executed prior to the effective date; (2) any Bond executed after the effective date, upon the award of any Contract to any Principal on a bid or proposal with respect to which the Surety has executed any bid or proposal Bond, consent of surety, or similar undertaking prior to the effective date of termination; (3) any Bond which the Surety has become obligated to execute prior to the effective date of termination; (4) the renewal, extension, substitution or modification of any of the foregoing Bonds, even though such renewal, extension, substitution or modification occurred after the effective date.

**XIX. WAIVER OF JURY TRIAL**

**THE PRINCIPALS AND INDEMNITORS EXPRESSLY AGREE THAT ANY SUIT, ACTION OR PROCEEDING BROUGHT OR INSTITUTED PURSUANT TO THIS AGREEMENT OR PURSUANT TO ANY BOND, CONTRACT OR BONDED CONTRACT SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING.**

**XX. SPECIFIC PERFORMANCE**

The Principals and Indemnitors acknowledge that any failure to pay to the Surety, immediately upon demand, the sums demanded by the Surety pursuant to Sections III and/or X and/or to provide access to books, records and information as required by Section XIII hereof shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Principals and Indemnitors agree that Surety shall be entitled, at its election, to immediate injunctive relief for specific performance of any and all obligations of the Principals and Indemnitors under this Agreement, and the Principals and Indemnitors hereby waive any claims or defenses to the contrary.

**XXI. GENERAL PROVISIONS**

A. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which, together, shall constitute one and the same instrument. Any scanned or electronically digitized copy of this Agreement – regardless of who created such copy – shall be as effective, and may be used by the Surety, for all purposes as though it were an original document.

DocuSign Envelope ID: 3E578C94-3A59-4026-BA5F-226C15134C5B

B. The Surety makes no representation as to the validity or acceptability of any Bonds provided pursuant to this Agreement. The Principals and Indemnitors shall have the sole responsibility to determine whether Bonds which they and the Surety may execute are in proper form, and they shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person or entity to award any contract to any Principal or Indemnitor or to accept any Bond executed and delivered by the Surety or that the Surety has been requested to execute and deliver.
C. The Principals and Indemnitors shall pay when due to the Surety all premiums and charges of the Surety and/or its agent/broker for any Bond in accordance with the Surety's rate filings and manual of rates, or as otherwise may be agreed.
D. The Principals and Indemnitors agree that there have been no oral or other agreements of any kind as a condition precedent or to induce the execution and delivery of this Agreement by any party.
E. The Surety has no obligation, and may, in its sole and absolute discretion, decline, to issue or to execute any Bond requested or applied for. The execution by the Surety of a bid or proposal Bond, or consent of surety, or any similar undertaking shall not obligate the Surety to issue or execute any final or other Bond that may be required in connection with any award that may be made under the proposal for which the bid or proposal Bond, or consent of surety, is given.
F. Delivery of this Agreement by any Principal or Indemnitor to the Surety and reliance by the Surety on the representations and promises set forth in this Agreement shall be conclusively presumed from the possession by the Surety or the Surety's agent/broker of a signed original or copy of this Agreement.
G. Absent express written agreement to the contrary, the liability of the Principals and Indemnitors under this Agreement shall be unaffected by any other agreement between any, some or all of the parties to this Agreement relating to the same subject matter.
H. The rights granted herein are in addition to, and shall not be deemed a waiver of, the Surety's equitable subrogation or any other rights under law or in equity.
I. Any and all other rights which the Surety may have or acquire against the Principals and Indemnitors or others under any other or additional agreements shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.
J. This Agreement sets forth executory undertakings of the Principals and Indemnitors only; there are no enforceable promises made by the Surety in this Agreement. The Principals and Indemnitors acknowledge that the Surety shall not be required to sign this Agreement; however, if the Surety acknowledges or accepts this Agreement in writing, such written acknowledgment or acceptance shall constitute a part of this Agreement.
K. Any right that any Principal or Indemnitor has against any other Principal or Indemnitor for indemnity or contribution is subordinate to the Surety's rights under this Agreement.
L. In the event that the Surety (1) procures the execution of any Bond by any other surety or sureties, (2) executes any Bond with co-sureties, or (3) reinsures any portion of any Bond with reinsuring sureties, then the provisions of this Agreement shall also inure to the benefit of such other sureties, co-sureties and reinsuring sureties to the extent of their interests.
M. The Indemnitors shall, at all times, remain familiar with the financial condition and operations of the Principals and the status of all Contracts.
N. The Principals and Indemnitors will, at any time upon the request of the Surety, procure the discharge or release of the Surety from any Bond and from any and all liability by reason thereof. The Surety may, at any time, take such actions as it deems necessary or proper to obtain its release from any and all liability under any Bond.
O. The Surety's exercise of, or failure to exercise, any right, remedy, power or entitlement under this Agreement or any other agreement between any or all of the parties shall not be deemed to be an election of remedy, estoppel or a waiver of any other right, remedy, power or entitlement. The Surety is not required to exhaust any remedy or right against any Principal or Indemnitor before asserting its rights against any other Principal or Indemnitor. The Surety is not required to pursue its rights against any collateral it may hold before asserting its rights under this Agreement. The Principals and Indemnitors hereby waive any defense that this Agreement was executed subsequent to the date of any Bond.
P. This Agreement is binding on any Principal or Indemnitor who signs it even if: (1) other identified Principals or Indemnitors fail to sign it; or (2) the execution by any Principal or Indemnitor is defective or invalid for any reason.
Q. This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety and shall be construed to provide the most extensive protection possible to the Surety within any limits imposed by applicable law. If any provision of this Agreement cannot be reasonably construed in such a way as to be enforceable under applicable law, then such provision or term shall be deemed to be excised from this Agreement, and this Agreement shall be enforced as though such provision had never been a part hereof.
R. This Agreement may not be altered or modified orally. No change or modification shall be valid unless made by written endorsement, executed by an officer of the Surety and all of the Principals and Indemnitors. No agent/broker of the Surety shall have the right to alter the termination or any other provisions of this Agreement, and no Principal or Indemnitor may rely upon any oral or written representations by any such alleged agent/broker of the Surety and must strictly adhere to the provisions hereof in order to terminate this Agreement.
S. All written notices to the Surety pursuant to this Agreement must be sent by registered or certified mail, return receipt requested, to the Surety at 801 South Figueroa Street Suite 700 Los Angeles, CA 90017 USA.
T. Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa. The Section headings herein are included for convenience only and shall not be deemed to be part of this agreement.

IN WITNESS WHEREOF, the Principal and Indemnitor hereby execute this Agreement, under seal.

**INDIVIDUAL PRINCIPALS OR INDEMNITORS**

**Individual Principal/ Indemnitor #1**

DocuSigned by: [signature] 4/21/2022
18E85ABDRFB743C...

| | |
|---|---|
| Michael D. Webb, Individually<br>*Printed Individual Principal/Indemnitor Name* | *Signature* |
| 752 170th Avenue, Somerset, WI 54025<br>*Address* | buckowebb@me.com<br>*Email Address* |

DocuSign Envelope ID: 3E578C94-3A59-4026-BA5F-226C15134C5B

**Individual Principal/ Indemnitor #2**

Jessica Webb, Individually
*Printed Individual Principal/Indemnitor Name*

DocuSigned by: 4/22/2022
*Signature* F144C8A2F76B459...

752 170th Avenue, Somerset, WI 54025
*Address*

Mjwebb@somtel.net
*Email Address*

**Individual Principal/ Indemnitor #3**

Nicholas Andrew Poolman, Individually
*Printed Individual Principal/Indemnitor Name*

DocuSigned by: Nick Poolman 4/25/2022
*Signature* ...E80C164EF...

3809 Stover Avenue, Spirit Lake, IA 51360
*Address*

nick.pool.man@hotmail.com
*Email Address*

**Individual Principal/ Indemnitor #4**

April Poolman, Individually
*Printed Individual Principal/Indemnitor Name*

DocuSigned by: April Poolman 4/26/2022
*Signature* D04E04234194B6...

3809 Stover Avenue, Spirit Lake, IA 51360
*Address*

Poolman.april@mayo.edu
*Email Address*

**Individual Principal/ Indemnitor #5**

*Printed Individual Principal/Indemnitor Name* | *Signature*

*Address* | *Email Address*

**Individual Principal/ Indemnitor #6**

*Printed Individual Principal/Indemnitor Name* | *Signature*

*Address* | *Email Address*

**Individual Principal/ Indemnitor #7**

*Printed Individual Principal/Indemnitor Name* | *Signature*

*Address* | *Email Address*

**Individual Principal/ Indemnitor #8**

*Printed Individual Principal/Indemnitor Name* | *Signature*

*Address* | *Email Address*

**Individual Principal/ Indemnitor #9**

*Printed Individual Principal/Indemnitor Name* | *Signature*

*Address* | *Email Address*

**Individual Principal/ Indemnitor #10**

*Printed Individual Principal/Indemnitor Name* | *Signature*

*Address* | *Email Address*

**CORPORATE/LLC/TRUST/OTHER PRINCIPALS OR INDEMNITORS**

**Corporate/LLC/Trust/Other Principal/Indemnitor #1**

General Construction Services, Inc - 598 180th Avenue, Somerset, WI 54025
*Printed Principal or Indemnitor Name and Address*

Michael D. Webb, President
*Printed Name and Title of Authorized Signer*

DocuSigned by: 4/21/2022 MW
18B85A0DAFB743C9...
*Authorized Signature*

buckowebb@me.com
*Email Address*

**Corporate/LLC/Trust/Other Principal/Indemnitor #2**

General Construction Services, Inc - 598 180th Avenue, Somerset, WI 54025
*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| Nicholas Andrew Poolman, Corporate Secretary | DocuSigned by: Nick Poolman 270D0FE80C164EF... 4/25/2022 | nick.pool.man@hotmail.com |
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #3**

P&W Holdings Enteprise, LLC - 598 180th Avenue, Somerset, WI 54025
*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| Michael D. Webb, Member | DocuSigned by: [signature] 18B6A0DAF5743C... 4/21/2022 | buckowebb@me.com |
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #4**

P&W Holdings Enteprise, LLC - 598 180th Avenue, Somerset, WI 54025
*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| Nicholas Andrew Poolman, Member | DocuSigned by: Nick Poolman 270D0FE80C164EF... 4/25/2022 | nick.pool.man@hotmail.com |
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #5**

B.B. Jack, LLC - 1003 18th Street, Spirit Lake, IA 51360
*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| Nicholas Andrew Poolman, Managing Member/Me | DocuSigned by: Nick Poolman 270D0FE80C164EF... 4/25/2022 | nick.pool.man@hotmail.com |
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #6**

Horizon Home and Farm Improvement, Inc. - 21225 214th Circle, Milford, IA 51351
*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| Nicholas Andrew Poolman, President and Corpora | DocuSigned by: Nick Poolman 270D0FE80C164EF... 4/25/2022 | nick.pool.man@hotmail.com |
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #7**

*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #8**

*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #9**

*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

**Corporate/LLC/Trust/Other Principal/Indemnitor #10**

*Printed Principal or Indemnitor Name and Address*

| | | |
|---|---|---|
| *Printed Name and Title of Authorized Signer* | *Authorized Signature* | *Email Address* |

# Exhibit B

TOKIO MARINE
HCC

Surety Group
801 S. Figueroa Street, Suite 700
Los Angeles, CA 90017 USA
Tel: 310-649-0990

**VIA Certified and Regular Mail**

December 9, 2025

General Construction Services, Inc.
c/o Michael D. Webb, President
454 County Road VV
Somerset, WI 54025

Michael D. Webb
Jessica L. Webb
752 170th Avenue
Somerset, WI 54025

Nicholas A. Poolman
April Poolman
3809 Stover Avenue
Spirit Lake, IA 51360

B.B. Jack, LLC
c/o Nicholas A. Poolman, Managing Member
1003 18th Street
Spirit Lake, IA 51360

P & W Holdings Enterprise LLC
c/o Michael D. Webb, Member
598 180th Street
Somerset, WI 54025

Horizon Home and Farm Improvement, Inc.
21225 214th Circle
Milford, IA 51351

Re: Principal: General Construction Services, Inc.
Surety: American Contractors Indemnity Company
Obligees: Various
Bonds: 1001188341, 1001203118, 1001203087, 1001203322, 1001188080, 1001203261, 1001223796

Dear Indemnitors:

American Contractors Indemnity Company (ACIC), issued the following surety bonds on behalf of or at the request of you or General Construction Services, Inc. (GCSI):

| **Bond No.** | **Contract/Project** | **Obligee** |
|---|---|---|
| 1001188341 | New Water Tower | Village of Henderson |
| 1001203118 | Elevated Water Reservoir Improvements | Town of Rosholt |
| 1001203087 | Refurbishment of 200,000 Gallon Tank | Barry Township |
| 1001203322 | Water System Improvements | City of Dalton |
| 1001188080 | Water Storage Tank Improvements | City of Murdock |
| 1001203261 | Elevated Storage Rehabilitations | City of Fair Play |
| 1001223796 | Water Tower Repair | City of Bisbee |

As partial consideration and inducement for ACIC's execution of the Bonds, you executed a General Indemnity Agreement (GIA) dated April 21, 2022 a copy of which is enclosed, pursuant to which, among other obligations, Principal and Indemnitors agreed:

General Construction Services, Inc.
B.B. Jack, LLC
P&W Holdings Enterprises, LLC
Horizon Home and Farm Improvement, Inc.
Michael D. Webb and Jessica L. Webb
Nicholas A. Poolman and April Poolman

***III. INDEMNITY, EXONERATION AND HOLD HARMLESS.***

*... to jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond, (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; (ix)the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise...*

***X. DEPOSIT WITH SURETY***

***A.*** *If an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the surety collateral in any amount, value, or form as the Surety may designate in its sole and absolute discretion. Such collateral shall be held by the Surety as collateral security in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with the Surety or any other benefits and protections afforded to the Surety by this Agreement or any other agreement.*

Pursuant to the GIA, including but not limited to the provisions set forth above, the Indemnitors are jointly and severally obligated to (a) indemnify and save harmless ACIC from and against any and all claims, loss, damage, demand, liability or expense, including attorney's fees, that ACIC might incur as the result of having issued the Bonds and (b) upon demand, deposit collateral security with ACIC to protect ACIC from present or future liability.

As of today's date, ACIC has received numerous claims under the Bonds from GCSI's subcontractors and suppliers and is aware other sums due subcontractors and suppliers on the bonded projects that have yet to file claim. These Payment Bond Claims and Potential Claims have resulted in losses under the Bonds in the amount of $575,232.61 and have exposed ACIC to potential additional losses under the Bonds. ACIC is requesting collateral for losses paid to date and reserves our rights to request additional collateral for further losses per the GIA. To date, the following Payment Bond Claims have been paid.

| Claimant | Amount |
|---|---|
| Central Tank Coatings, Inc. | $241,000.00 |
| Muth Electric, Inc. | $249,035.00 |
| Bay Crane Midwest, LLC | $ 60,820.74 |
| Dixon Engineering, Inc. | $ 24,376.87 |

ACIC has retained legal counsel to assist its investigation of the Payment Bond Claims and the Potential Claims and, consequently has incurred and will continue to incur fees and expenses. Pursuant to the GIA, the Indemnitors are obligated to reimburse all losses under the Bonds, including these fees and expenses. Accordingly, ACIC requests that the Indemnitors fulfill their obligation under Section X, A of the GIA by (1) immediately depositing cash, a cashier's check or certified funds with ACIC in the amount of $575,232.61 or (2) a lien on the real property identified in the enclosed Deed of Trust. ACIC expressly reserves its rights under the GIA and the law to demand reimbursement and indemnification for all losses incurred as the result of ACIC having issued the Bonds, including attorneys' fees, consultants' fees, other investigative fees, interest, costs and expenses. At this time, ACIC requests that GCSI submit payment for $575,232.61 or sign the enclosed Deed of Trust no later then December 19, 2025.

ACIC fully reserves all of its rights, remedies and defenses under the terms of the Bonds, the Contracts, the GIA and the law.

Please contact me if you have any questions.

Very truly yours,

*TODD A. LEYVA*

TODD A. LEYVA
SENIOR BOND CLAIMS LITIGATION REPRESENTATIVE
Tokio Marine HCC - Surety Group
On behalf of American Contractors Indemnity Company
Direct Line: (714) 603-4521
Email: tleyva@tmhcc.com